UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                             **OPINION & ORDER**

            -against-

                                                                             25-CR-118 (DLI)

MARK LENWOOD PETERS III, also known as
Spade,

                         Defendant.

-------------------------------------------------------------------X
**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

On April 1, 2025, an indictment was unsealed against, *inter alia*, Defendant Mark Lenwood Peters III, also known as "Spade" ("Defendant"). *See* Dkt. No. 6. As set forth in the indictment, Defendant is charged with four counts of firearms-related offenses. *See id.* According to the Government, Defendant, together with his co-defendants, "engineered a gun-trafficking conspiracy that distributed 26 deadly firearms into our communities, including semi-automatic handguns, rifles, stolen firearms, firearms with obliterated serial numbers, and 'ghost guns.'"[1] Dkt. No. 15 at 1.

During Defendant's arraignment on April 11, 2025, the Government moved, pursuant to 18 U.S.C. § 3142, for an order of detention pending trial. A detention hearing was held on the same date. Defendant presented a bail application and moved for pretrial release, which the Government opposed.

---

[1] "Ghost guns" are fully functional firearms that are privately assembled through unfinished frames and receivers, often obtained through kits or 3D printers, and generally do not have serial or manufacturing markers. *See* Dkt. No. 15 at 2; *United States v. Alcantara*, No. 22-CR-152 (VSB), 2023 WL 3883961, at *1 n.2 (S.D.N.Y. June 8, 2023) ("'Ghost guns' are firearms that are sold without serial numbers or manufacturer markings"); *see also Bondi v. VanDerStok*, No. 23-852, 604 U.S. at *15, 2025 WL 906503, at *16 (U.S. Mar. 26, 2025) (Thomas, J. dissenting) (explaining that "ghost guns" are "privately made firearms built from kits or collections of unfinished parts").

For the reasons set forth on the record during the detention hearing, and for the reasons set forth below, the Court grants the Government's motion and orders Defendant detained pending trial.

## I.     RELEVANT BACKGROUND

Defendant is charged with four counts in relation to the alleged gun conspiracy, consisting of: (i) firearms trafficking conspiracy under 18 U.S.C. §§ 933(a)(3), 933(b) and 3551 *et seq.*; (ii) firearms trafficking under 18 U.S.C. §§ 933(a)(1)-(2), 933(b) and 3551 *et seq.*; (iii) unlicensed firearms dealing conspiracy under 18 U.S.C. §§ 922(a)(1)(A), 371 and 3551 *et seq.*; and (iv) unlicensed firearms dealing under 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D), and 3551 *et seq*. Dkt. No. 6 at ¶¶ 1-5.

The Government alleges that since "approximately March 2024, the Government has been investigating the unlawful trafficking of firearms from North Carolina to New York City." Dkt. No. 15 at 1. Over the course of the investigation, Defendant and his co-conspirators allegedly sold 26 firearms—including those to undercover law enforcement officers—through five transactions between March and May of 2024 in Queens, New York. *Id.* These transactions "occurred primarily in the parking lot of a local Popeye's restaurant" near a public housing development. *Id.* at 2. "Almost all of the deals occurred in the middle of the afternoon and in broad daylight" and involved primarily handguns "that could be easily concealed." *Id.* Further, "some of the guns had obliterated serial numbers or were made from 'ghost gun' kits so that they would be more difficult to track by law enforcement." *Id.* During the sales, undercover officers purportedly told Defendant and his co-conspirators that they traveled from Chicago, where they would return to resell the purchased firearms. *Id.*

The Government contends that Defendant "lives in North Carolina and helped to procure and transport guns to New York City." *Id.* According to the indictment, Defendant participated in the transaction of "five firearms, one of which had previously been reported stolen," to two undercover officers in Queens on April 9, 2024. Dkt. No. 6 at ¶ 4. Defendant is additionally alleged to have negotiated and planned another sale during which 10 firearms were sold to the [undercover officer]." Dkt. No. 15 at 2. The Government alleges that in total, Defendant is "strongly connected" 15 of the 26 firearms that were sold during the course of the conspiracy. *Id.* at 1-2.

On April 1, 2025, arrest warrants were issued by the Clerk of the Court as to Defendant and one of his co-conspirators.[2] Dkt. Nos. 4-5. On April 3, 2025, Defendant was arrested in the Western District for the District of North Carolina. *See United States v. Peters*, No. 3:25-MJ-82 (W.D.N.C. 2025), Text Order dated Apr. 3, 2025. Defendant appeared in the United States District Court for the Western District of North Carolina on April 3, 2025; he was subsequently released on conditions and $25,000 bond. No. 3:25-MJ-82, Dkt. Nos. 7-8.[3] Additionally, the Court ordered Defendant to "appear in the district where charges are pending and transferring bail" as notified by the Eastern District of New York. No. 3:25-MJ-82, Dkt. No. 9.

On April 11, 2025, Defendant appeared in the United States District Court for the Eastern District of New York and was arraigned before the undersigned. Defendant entered a plea of not guilty. During the arraignment, the Government moved, pursuant to 18 U.S.C. § 3142, for an

---

[2] The indictments as to Defendant and co-defendant Anthony Colon were unsealed on April 3, 2025. Dkt. No. 7. Defendant Colon was arrested, arraigned, and released on bond on April 4, 2025. Dkt. No. 10. The indictment charges three additional defendants, who will be arraigned at a future date. *See* Dkt. No. 15 at 1 n. 1.

[3] As noted at the April 11, 2025 detention hearing, the Government sought detention of Defendant before the Western District of North Carolina. *See* No. 3:25-MJ-82, Minute Entry dated Apr. 3, 2025.

order of detention pending trial. A detention hearing was held on the same date. Defendant presented a bail application and moved for pretrial release, which the Government opposed.

**II.     RELEVANT LAW**

"The Bail Reform Act, 18 U.S.C. §§ 3141, *et seq*. ("the Act"), prescribes the statutory standards for determining whether a criminal defendant should be detained or released pending trial." *United States v. Wang*, 670 F. Supp. 3d 57, 64 (S.D.N.Y. 2023), *aff'd*, 2023 WL 4551637 (S.D.N.Y. July 14, 2023). "Pursuant to the Act, the Court 'shall order the pretrial release of [a defendant] on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court [. . .], unless the judicial officer determines that such release (1) will not reasonably assure the appearance of the person as required or (2) will endanger the safety of any other person or the community.'" *Id.* (quoting 18 U.S.C. § 3142(b). "Release may be denied only if, after a hearing, 'the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *Id.* (quoting 18 U.S.C. § 3142(e)(1) and citing *United States v. Baig*, 536 F. App'x 91, 92 (2d Cir. 2013)); *see also United States v. Atomei*, No. 24-CR-78 (MKB), 2024 WL 1934195, at *1 (E.D.N.Y. May 2, 2024) ("The Bail Reform Act requires a court to order the pretrial detention of a defendant if, after a hearing, the judge 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" (quoting *United States v. Mattis*, 963 F.3d 285, 290 (2d Cir. 2020))).

In making its determination, the Court must consider the following factors set forth in 18 U.S.C. § 3142(g):

> (1) the nature and the circumstances of the offense charged, including whether the offense is a crime of violence . . . ;

4

> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including [his] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . .
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release[.]

*Atomei*, 2024 WL 1934195, at *1 (E.D.N.Y. May 2, 2024) (citing *United States v. Kelly*, No. 20-1720, 2020 WL 7019289, at *1 (2d Cir. Sept. 8, 2020) (same)); *see also United States v. Zhang*, 55 F.4th 141, 149 (2d Cir. 2022) (explaining that the court shall consider these four factors in determining whether there are conditions that will reasonably assure the defendant's appearance). "[T]he weight given to each factor will inevitably vary from case to case, and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight." *Zhang*, 55 F.4th at 149-50.

A finding that the defendant presents a flight risk must be supported by a preponderance of the evidence, *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007), while a finding that the defendant is dangerous must be supported by clear and convincing evidence. *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995); *see also United States v. McGill*, No. 24-MJ-609 (MJP), 2024 WL 4647613, at *4 (W.D.N.Y. Nov. 1, 2024) (describing "clear and convincing evidence" in this context as "evidence that produces in the mind . . . a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.") (citing, *inter alia*, *Blair v. Inside Ed. Prods.*, 7 F. Supp. 3d 348, 358 (S.D.N.Y. 2014)).

"Upon finding that the defendant presents a flight risk or a danger to the community, the court must then determine whether there are conditions of release that will assure the appearance of the person and the safety of those in the community." *Atomei*, 2024 WL 1934195, at *1 (citing *Zhang*, 55 F.4th at 151) (considering whether the bail package held sufficient "moral suasion" over the defendant and mitigated the risk of flight and danger).

III.  **DISCUSSION**

The facts proffered by the Government show, by clear and convincing evidence, that Defendant poses a danger to the community based on his participation in a conspiracy to traffic over twenty firearms into New York City. *See Ferranti*, 66 F.3d at 542 (holding that "the government may proceed by proffer" in detention hearings); *United States v. Ward*, 748 F. Supp. 3d 104, 108 (E.D.N.Y. 2024) (same).

As an initial matter, the nature and circumstances of the crime charged weighs strongly in favor of detention. Defendant is charged with unlawful firearms trafficking and unlicensed firearms dealing conspiracy. *See* Dkt. Nos, 6, 15. The Government alleges that Defendant participated in the transaction of "five firearms, one of which had previously been reported stolen," to two undercover officers in Queens on April 9, 2024. Dkt. No. 6 at ¶ 4. Defendant is additionally alleged to have negotiated and planned another sale during which 10 firearms were sold to the [undercover officer]." Dkt. No. 15 at 2. In total, as noted at the April 11, 2025 conference, Defendant is purported to be "strongly connected" to 15 of the 26 firearms that were sold during the conspiracy. Courts in this Circuit regularly order pretrial detention in cases involving gun trafficking or possession of firearms. *See, e.g., United States v. McCann*, No. 23-CR-08 (WFK), 2023 WL 2857917, at *6 (E.D.N.Y. Apr. 10, 2023) (ordering detention of defendant involved in firearms trafficking conspiracy); *United States v. Clarke*, No. 22-CR-341

(LDH), Dkt. Nos. 4, 13, 14 (E.D.N.Y.) (same); *United States v. Smalls*, No. 20-CR-126 (LTS), 2020 WL 1866034, at *1 (S.D.N.Y. Apr. 14, 2020) (affirming magistrate judge's order of detention that was based, in part, on "the general danger to the community posed by [the defendant's] apparently ready access to firearms").

Next, the weight of the evidence favors detention. While Defendant "is presumed innocent of these charges, the Court takes the serious allegations against [him] into consideration when evaluating the strength of the evidence justifying [his] detention." *United States v. Lewis*, 5 F. Supp. 3d 515, 529 (S.D.N.Y. 2014) (denying defendant's request for release from pretrial detention because "[t]he record shows that Lewis poses a threat to the community"). Defendant's arrest was the culmination of the Government's investigation since March 2024 into the unlawful trafficking of firearms from North Carolina to New York City. *See* Dkt. No 15 at 1. During this investigation, over the course of five transactions, the conspiracy allegedly sold 26 firearms, including to undercover officers, in Queens, New York. *Id*. The controlled purchases of the firearms—including the sale involving Defendant on April 9, 2024—were heavily documented and recorded through video evidence. *Id.* at 5. Additional evidence against Defendant includes telephone records showing communications among the co-conspirators, in-person surveillance, and physical evidence consisting of firearms and ammunition. *Id*.

Defendant's criminal history provides further bases for detention. *See* Dkt. No 15 at 5. Less than a month ago, on March 15, 2025, Defendant was arrested in North Carolina for unlawfully carrying a concealed weapon; those charges are pending in state court. *See id*. at 4.

Finally, the nature and seriousness of the danger to any person or the community posed by Defendant's release is significant. Defendant allegedly conspired to import 26 illegal firearms into New York City. *See* Dkt. No. 15 at 1. These firearms included semi-automatic handguns,

7

rifles, stolen firearms, firearms with obliterated serial numbers, and "ghost guns." *Id.* Moreover, the Government alleges that some of the transactions giving rise to Defendant's charges occurred in close proximity to restaurants and public housing complexes, and in broad daylight. *Id.* at 2. Defendant's alleged conduct evidences a complete disregard for the dangers illegal and untraceable firearms pose to the community.

At bottom, the Court finds that no condition or combination of conditions will reasonably assure the safety of any other person and the community.[4]

### IV.  CONCLUSION

For the foregoing reasons, the Court enters an order of detention against Defendant.

Dated:     Brooklyn, New York
           April 11, 2025

**SO ORDERED.**

  */s/ Joseph A. Marutollo*
JOSEPH A. MARUTOLLO
United States Magistrate Judge

---

[4] "A court does not need to find that both bases [under the Bail Reform Act] are proven to order a defendant's detention." *United States v. Rains*, No. 22-CR-18 (NSR), 2022 WL 4534540, at *1 (S.D.N.Y. Sept. 28, 2022) (citing *United States v. Blanco*, 570 F. App'x 76, 78 (2d Cir. 2014) (declining to consider whether a risk of danger to the community warranted detention where there was a finding of risk of flight)). Nonetheless, the evidence further weighs in favor of detention on the grounds that Defendant is a flight risk. *See United States v. Bruno*, 89 F.Supp.3d 425, 431 (E.D.N.Y. 2015) ("'When evidence of a defendant's guilt is strong, and when the sentence upon conviction is likely to long . . . a defendant has stronger motives to flee.'") (quoting *United States v. Iverson*, 14-CR-197 (RJA), 2014 WL 5819815, at *4 (W.D.N.Y. Nov. 10, 2014)). Defendant faces a significant a term of incarceration in this case, as he and his co-conspirators have been charged with charged with firearms trafficking offenses that carry a term of imprisonment up to 15 years. *See* Dkt. No. 15 at 5; 18 U.S.C. § 933(b). *See Blanco*, 570 F. App'x at 77 (affirming district court's order of detention where defendants faced lengthy term of imprisonment). Further, Defendant's ties to the Eastern District of New York are minimal, as he lives in North Carolina. *See* Dkt. No. 15 at 5.